FILED
2013 Jun-17 PM 12:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **WILLIAM HARPER,** | } | |
| **Plaintiff,** | } | |
| **v.** | } | **Case No.: 2:12-CV-00502-RDP** |
| **MICHAEL ASTRUE, COMMISSIONER OF SOCIAL SECURITY,** | } | |
| **Defendant.** | } | |

**MEMORANDUM OF DECISION**

Plaintiff William Harper brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Social Security disability insurance benefits under Title II of the Act. After reviewing the record and the briefs submitted by the parties, the court finds that the Commissioner's decision is due to be affirmed.

**I. Proceedings Below**

Plaintiff filed his application for disability insurance benefits ("DIB") on October 29, 2007, alleging disability beginning on September 10, 2007. (Tr. 69, 121). After the initial application was denied, Plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ") on May 26, 2010 in Birmingham, Alabama. (Tr. 42). In his August 19, 2010 decision, the ALJ determined that Plaintiff was not eligible for DIB because he failed to meet the disability requirements of the Act. (Tr. 31). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision on December 6, 2011 (Tr. 1), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's review. 42 U.S.C. § 405(g).

At the time of the hearing, Plaintiff was 32 years old and had a seventh-grade education. (Tr. 57). Plaintiff had previously worked as a laborer in a steel mill and as a pipe fitter. (Tr. 54-55). Plaintiff alleges disability from September 10, 2007 due to severe back, hip, and groin pain. (Tr. 131). Plaintiff first sought treatment on September 24, 2007, complaining of lumbar back pain extending into his legs. (Tr. 165). An MRI revealed a right paracentral T11-12 disc protrusion that was compressing his anterior thecal sac, but showed no significant compression of the spinal cord. (Tr. 163). That same MRI found two bulging discs and degenerative disc and joint disease at several points in Plaintiff's spine. (*Id.*).

Plaintiff's explanation of how he injured his back changed over time. He first reported that his pain was initially caused by "taking a bad step getting out of the shower." (Tr. 165). He also claimed on later occasions that his pain started when he "lifted something heavy" and that he had injured it while working as a pipe fitter. (Tr. 267, 319). During an examination on July 14 2009, Plaintiff was unable to identify the precipitating event at all. (Tr. 183).

The rest of the medical evidence in the record comes from examinations conducted in the two years following his application for DIB. During that time, Plaintiff sought treatment from Dr. Sean Stehr at the UAB Spain Rehabilitation Clinic and various physicians at the emergency room of UAB Highlands. (Tr. 205-68, 309-320). On March 24, 2008, Plaintiff was admitted to the emergency room of UAB Highlands complaining of back pain. (Tr. 267). After examining Plaintiff and reviewing his medical records, doctors at UAB Highlands concluded that surgery was not necessary and discharged him with prescriptions for Vicodin and Naprosyn. (*Id.*). At the same time Plaintiff also saw Dr. Sean Stehr and, on May 29, 2008, at the request of his attorney, Plaintiff saw Dr. Stehr with complaints of lower back pain and paperwork concerning his inability to work. (Tr. 316). Dr.

Stehr indicated in his report that he was unable to determine whether or not Plaintiff would be able to someday resume work as a pipe fitter, but that "there is no medical reason he is unemployable in a less physically demanding occupation." (Tr. 317). On June 22, 2008, Plaintiff returned to the UAB Highlands Emergency Room complaining of tingling and numbness. (Tr. 256-57). Plaintiff denied using illicit drugs; however, Plaintiff tested positive for marijuana. (*Id.*). Dr. Willie Gilford, a physician who treated Plaintiff on this occasion, diagnosed Plaintiff with supraventricular tachycardia and dehydration, which Dr. Gilford suspected was brought on by Plaintiff's drug use. (*Id.*).

Shortly afterward, Plaintiff returned to Dr. Stehr requesting a re-evaluation of his back pain in light of his recent visit to the Emergency Room at UAB Highlands. (Tr. 313). Dr. Stehr reiterated that he was unable to provide Plaintiff with paperwork testifying to his inability to work and furthermore refused Plaintiff's request for narcotic pain medicines, "given his recent ER visit for likely drug-induced supraventricular tachycardia and his potential for polysubstance abuse." (Tr. 314).

Plaintiff returned to Dr. Stehr in January 2009 complaining of continued back pain. (Tr. 311). Dr. Stehr provided Plaintiff with a referral for a surgical evaluation of his symptoms and prescribed Ultram for pain. (Tr. 312). Later in 2009, Plaintiff, again checked into the emergency room of UAB Highlands complaining of lumbar back pain. (Tr. 228). The physician who treated him noted that Plaintiff's pain response was "somewhat exaggerated," but prescribed morphine and Phenegran. (Tr. 228-29).

Plaintiff received a consultative examination by Dr. Adam Nortick on July 14, 2009 pursuant to his social security evaluation. (Tr. 24, 176). During the examination, Plaintiff complained of

continued back, groin, and leg pain, noting that he had been treating this pain with medication and using a cane, which he stated was recommended by a doctor.[1] (Tr. 184-85). Dr. Nortick diagnosed Plaintiff with the same problems revealed in his September 2007 MRI: lumbar back pain, and lumbar radicular pain. (Tr. 194). Dr. Nortick articulated some limitations on Plaintiff's functional capabilities: (1) that he could stand and walk on only an occasional basis; (2) that he should not climb stairs; (3) that he should not reach over his head; (4) that he should not bend or squat; and (5) that he may lift only up to ten pounds. (*Id.*). However, Dr. Nortick stated that Plaintiff exhibited exaggerated outward responses to his alleged pain and that he displayed muscle weakness that could not be explained "on a localized neurological basis." (Tr. 193).

Plaintiff saw Dr. Stehr for one final time in December 2009. (Tr. 309). Plaintiff complained of worsening lower back pain, reporting that the steroid injections were unhelpful and that physical therapy only exacerbated his pain. (*Id.*). Plaintiff also admitted to occasional marijuana use. (*Id.*). Dr. Stehr's examination revealed Plaintiff's "[l]umbar spine" to be "exquisitely tender to light palpation," and muscle strength to be "4+/5 throughout," but limited by his pain. (*Id.*). Dr. Stehr noted that Plaintiff was "independent with all activities of daily living," yet "severely limit[ed]" by his pain in securing and keeping employment. (*Id.*). Dr. Stehr noted that Plaintiff had exhausted treatment options available at the Spain Rehabilitation Clinic, and agreed to establish a primary care provider for Plaintiff and to refer him to a chronic pain clinic. (*Id.*).

---

[1] Contrary to Plaintiff's assertion to Dr. Nortick, at his hearing before the ALJ, Plaintiff indicated that he had decided on his own to use a cane. (Tr. 51).

On May 13, 2010, Plaintiff checked into the UAB emergency room, complaining of chest pain that began as he was playing Xbox three days prior. (Tr. 330). Plaintiff was ultimately discharged with a diagnosis of muscle strain. (Tr. 332).

## II. ALJ Decision

Determination of disability under the Act requires a five-step analysis. *See* 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the claimant engages in gainful work activity, then the claimant cannot claim disability. Second, the ALJ determines whether the claimant has a medically determinable impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities. Absent such impairment, the claimant may not claim disability. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). If such criteria are met, the claimant is declared disabled.

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). When determining a claimant's RFC, an ALJ considers all relevant evidence of impairment, including subjective claims of pain. If a claimant alleges disabling pain, the ALJ must properly apply the Eleventh Circuit's pain standard when evaluating a claimants subjective allegations of pain.

In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. If the claimant is determined to be capable of performing past relevant work, then he or she is deemed not disabled. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his or her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(g), 404.1560(c).

In this case, the ALJ determined that: (1) Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date; (2) Plaintiff does have medically determinable impairments that more than minimally affect his ability to perform work-related activities; but (3) those impairments or any combination of these impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 26).

When evaluating Plaintiff's RFC, the ALJ considered Plaintiff's pain testimony and concluded that, while Plaintiff has an underlying medical condition capable of producing some pain, the evidence as a whole does not suggest that Plaintiff's medical condition could reasonably be expected to give rise to disabling pain. (Tr. 29). The ALJ determined that, although his RFC did not allow Plaintiff to return to his previous work as a pipe fitter, Plaintiff could perform light work with some limitations. (*Id.*). Given this RFC determination, the ALJ found that Plaintiff could work as a parking lot cashier and storage facility rental clerk. (Tr. 30). Thus, the ALJ determined that Plaintiff was not disabled under the Act. (Tr. 31).

### III. Plaintiff's Argument for Remand

Plaintiff presents one argument for remand. He asserts that although the ALJ articulated specific reasons for rejecting the credibility of Plaintiff's subjective complaints of pain, each of these reasons was not supported by substantial evidence, and therefore Plaintiff's pain testimony "must be accepted as true." (Pl.'s Mem. 8).

### IV. Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence or whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

Substantial evidence is more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Martin v. Sullivan*, 894 F.2d at 1529. If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Martin,* 894 F.2d at 1529. Legal standards are reviewed *de novo*. *Moore v. Barnhart*, 405 F. 3d 1208, 1211 (11th Cir. 2005).

## V. Discussion

The only issue raised by Plaintiff is whether the ALJ's stated reasons for discrediting Plaintiff's pain testimony are supported by substantial evidence. In support of his argument that the ALJ's findings are not supported, Plaintiff quotes *Hale v. Bowen*, 83 F.2d 1007, 1012 (11th Cir. 1987), to invoke the well-established rule that the ALJ must articulate explicit and adequate reasons for discrediting a claimant's pain testimony and that the ALJ's articulated reasons must be supported by substantial evidence. (Pl.'s Mem. at 7). Plaintiff asserts that the ALJ failed to articulate reasons for discrediting Plaintiff's pain testimony that are supported by substantial evidence and therefore "failed to satisfy the requirements of *Hale*." (*Id.* at 12). This argument, however, puts the cart before the horse.

The Eleventh Circuit has long established that a claimant seeking to show disabling pain must present (1) evidence of an underlying medical condition and (2) either objective medical evidence that confirms the severity of the alleged pain arising from that condition, or that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Hand v. Heckler,* 761 F.2d at 1548 (quoting S.Rep. No. 466 at 24); *see also Landry v. Heckler,* 782 F.2d 1551, 1553 (11th Cir. 1986). If the ALJ finds that a claimant meets this threshold requirement, the ALJ may still discredit a claimant's subjective allegations of disabling pain, but the ALJ "must clearly articulate explicit and adequate reasons for discrediting the claimant's allegations." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 1995). Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true. *Holt*, 921 F.2d at 1223; *Cannon v. Bowen,* 858. F.2d 1541, 545 (1th Cir. 1988). This requirement that the

ALJ articulate explicit and adequate reasons for discrediting the claimant's pain testimony, however, is only triggered if a claimant meets the threshold requirement by producing objective evidence of an underlying medically determinable physical or mental condition that confirms the severity of the alleged pain or could reasonably be expected to give rise to the alleged pain. *Holt,* 921 F.2d at 1223; *see also Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir.1995) ("The Secretary must consider a claimant's subjective testimony of pain *if* she finds evidence of an underlying medical condition...") (emphasis added).

In this case, the ALJ determined that Plaintiff's "description of his pain and disabling limitations [was] not fully credible in light of the statements from examining and treating practitioners, medical history and objective, clinical findings on examination." (Tr. 27). The ALJ articulated at least ten reasons for discrediting Plaintiff's testimony. (Tr. 27-28). Upon careful review, the court concludes that the ALJ's fact finding is supported by substantial evidence.

First, the ALJ articulated reasons for his finding that are rooted in the assessments of Plaintiff's treating and examining physicians: (1) the May 2008 statement by one of Plaintiff's treating physicians, Dr. Stehr, that although Plaintiff might not be able to resume his work as a pipe fitter, "there was no medical reason he was unemployable in a less physically demanding occupation" (Tr. 27, 317); (2) that Dr. Stehr later "refused to complete paperwork requested by the claimant stating his inability to work" (Tr. 27, 314); (3) that during a July 2009 evaluation by Dr. Nortick, "the claimant engaged in 'disproportionate' verbalization, facial expression and pain behavior" and "exhibited weakness of many muscle groups which could not be explained on a localized basis" (Tr. 27, 193); and (4) notes from a December 2009 examination indicating that "although the claimant's lumbar spine was 'exquisitely tender to light palpation,' there were no

deficits to light touch or pinprick in the lower extremities" and Plaintiff's muscle strength was "4+/5, although it was pain limited." (Tr. 27, 309). The ALJ reiterated that Dr. Stehr's May 2008 statement regarding Plaintiff's apparent ability to do work less demanding than that of a pipe fitter contradicted Plaintiff's statement at his hearing that he was forced to lie down for half of the day since September 2007. (Tr. 28-29, 49). The ALJ also gave this testimony more weight than that of Dr. Nortick, since Dr. Stehr was Plaintiff's treating physician. (Tr. 28-29).

The ALJ also articulated reasons for discrediting Plaintiff's testimony rooted in inconsistencies in the Plaintiff's own statements and testimony or inconsistencies between Plaintiff's statements and objective medical records: (1) that Plaintiff's testimony that he was unable to focus for any length of time due to his pain is contradicted by his playing Xbox–an activity "requiring excellent ability to focus on a task--and that Dr. Stehr noted a "paradox" in the fact that Plaintiff claimed an inability to work due to disabling pain, but was still "independent with all activities of daily living" (Tr. 28, 51, 309, 330); (2) that in September 2007, Plaintiff first complained of "lumbar back pain radiating down both legs," but complained of "pain in the perineal area" before the ALJ, stating that this perineal area pain caused his initial work stoppage (Tr. 28, 48-49, 165-66); (3) that Plaintiff "reported pain and decreased sensation not corresponding to any dermatome or nerve distribution" (Tr. 28, 193); (4) that Plaintiff has made inconsistent statements on four occasions regarding the precipitating event of his alleged disability (Tr. 28, 165, 183, 267, 319); (5) that Plaintiff "requested narcotics for pain relief" but a treating physician determined that non-narcotic pain relief medicines were appropriate (Tr. 28, 314); and (6) that Plaintiff made inconsistent statements about whether the cane he used was recommended by a physician. (Tr. 28, 51, 184).

Even a quick review of the record demonstrates that the ALJ went to great lengths in articulating specific reasons for discrediting Plaintiff's subjective pain testimony. Thus, in order for his testimony to be accepted as true, Plaintiff must show that these reasons are not supported by substantial evidence. *Hale*, 831 F.2d at 1012.[2] "Substantial evidence" is any amount of evidence greater than a mere scintilla. *Martin*, 894 F.2d at 1529. Thus, to prevail on this claim, Plaintiff must chip away at the specified reasons supporting the ALJ's credibility determination, refuting them one by one until the ALJ's credibility determination is supported by a mere scintilla or less of evidence. Plaintiff has failed to do so.

---

[2]The court further notes that Plaintiff's reliance on *Hale v. Bowen*, 831 F.2d 1007 (11th Cir. 1987), a case in which the Eleventh Circuit found that an ALJ's articulated reasons for discrediting a claimant's pain testimony were not supported by substantial evidence, is misplaced both as a factual and legal matter. In *Hale*, the Eleventh's Circuit's articulated the proper legal to be employed in reviewing an ALJ's pain standard findings:

> Subjective pain testimony *that is supported by objective medical evidence* of a condition that can reasonably be expected to produce the symptoms of which the claimant complains is itself sufficient to sustain a finding of disability . . . If the Secretary refuses to credit *such* testimony, he must articulate explicit and adequate reasons.

*Hale v. Bowen*, 831 F. 2d at 1011 (emphasis added) (internal citations omitted). Contrary to Plaintiff's assertions in this case, a careful reading of *Hale* shows that the requirement that the ALJ articulate explicit and adequate reasons applies only when the ALJ refuses to credit testimony that has *already* met the threshold pain standard requirements articulated in *Holt*. In other words, the requirements of *Hale* are relevant only if an ALJ has determined that there is objective medical evidence of a condition that can reasonably be expected to produce the symptoms of which the claimant complains. That is not the case here. In this case, the ALJ concluded that:

> Although the documentary evidence establishes that the claimant has an underlying medical condition capable of producing some pain and limitations, substantial evidence as a whole does not confirm disabling limitations arising from his condition, *nor does it support a conclusion that the objectively determined medical condition is of such severity that it could reasonably be expected to give rise to disabling pain and other limitations.*

(Tr. 29) (emphasis added).

Therefore, the real question before the court is not whether the ALJ articulated explicit and adequate reasons for discrediting Plaintiff's pain testimony, but whether the ALJ's finding regarding the absence of objective medical evidence of an underlying condition is supported by substantial evidence. The court finds that it is.

First, although Plaintiff attacks the reasons articulated by the ALJ for discrediting his testimony (Pl. Mem. 8), he fails to address many of these reasons. For example, although Plaintiff acknowledges that he gave conflicting reports as to what event caused his impairment (Pl.'s Mem. 10), he makes no further mention of these inconsistencies. More importantly, Plaintiff makes no argument directly stating why these inconsistencies were not a valid ground for the ALJ's credibility determination. Plaintiff is completely silent as to some of the other reasons articulated by the ALJ. Thus, the evidence supporting these reasons goes undisputed, and remains to support the ALJ's decision.

Plaintiff does attempt to refute certain of the ALJ's articulated reasons for discrediting Plaintiff's pain testimony. (*See* Pl.'s mem. 8). However, these attempts miss the mark. Plaintiff first attacks the ALJ's reliance on Dr. Stehr's statement that Plaintiff could perform work less demanding than pipe-fitting (FOOTNOTE)[3], along with Dr. Stehr's refusal to sign a document stating that Plaintiff was unable to work. (Pl.'s Mem. 8-9). Plaintiff argues that Dr. Stehr's statement was "premature" in light of subsequent medical developments, and that the ALJ erroneously "dismissed the high likelihood" that Dr. Stehr refused to give a written statement at the time of the evaluation because he "was unsure of Plaintiff's prognosis at the time" and "felt that treatment would ultimately improve the Plaintiff's back pain." (Pl.'s mem. 9-10).

---

[3]The ALJ noted that Plaintiff's medical records from UAB Highlands and the UAB Spain Rehabilitation Clinic do not include any evidence of disabling pain. (Tr. 22-26). In fact, the ALJ noted, Plaintiff's treating physicians were consistently skeptical of Plaintiff's allegations of pain. The ALJ cited the findings of Dr. Stehr, who reported that "there was no medical reason [Plaintiff] [would be] unemployable in a less physically demanding occuping [than pipe fitting]." (Tr. 27). That finding is supported by the record. (Tr. 317). The ALJ also cited the evaluation by Dr. Nortick, who noted that Plaintiff exaggerated his allegations of pain. (Tr. 27). This too is supported by the record: (Tr. 193). Likewise, as the ALJ noted (Tr. 24), records from UAB Highlands described Plaintiff's pain response as "somewhat exaggerated." (Tr. 228-29).

Plaintiff also argues that the ALJ's reliance on inconsistencies between Plaintiff's testimony and "early treatment notes" was misplaced[4]. (Pl.'s mem. 10). Although the precise thrust of Plaintiff's argument is unclear, Plaintiff appears to take issue with the ALJ's weighing of evidence, arguing that the ALJ disregarded other "objective medical evidence which supports Plaintiff's subjective complaints of pain" and "substituted in its place his own 'medical' opinion." (Pl.'s mem. 10-11). As to this latter allegation, Plaintiff cites *Rohan v. Chater*[5], 98 F. 3d 966 ( for the proposition that an ALJ may not "play doctor and make [his] own independent findings." *Rohan*, 98 F.3d at 970.

This is clearly not a case of the ALJ making "independent findings" or "playing doctor." Eleventh Circuit law does prohibit an ALJ from making independent medical assessments by engaging in "sit and squirm" jurisprudence. *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982). Specifically, an ALJ may not "subjectively arrive at an index of traits which he expects the claimant to manifest at the hearing" and deny the claim if the claimant does not do so. *Id.* The ALJ simply has not engaged in "sit and squirm" jurisprudence here. Rather, the ALJ grounded his findings in objective medical evidence of record--namely the reports of Dr. Stehr--and chose to credit this evidence more than other available evidence. Thus, again, Plaintiff's assertion of error is reduced to his disagreement with the ALJ's weighing of evidence.

---

[4]The ALJ also based his decision on discrepancies in Plaintiff's testimony that undermine his credibility. As the ALJ noted, Plaintiff frequently changed his explanation of what caused his pain. (Tr. 28). This is well-documented in the record. (Tr. 48-49, 165-166, 183, 193, 267, 319). The ALJ also noted Plaintiff's inconsistent testimony regarding his use of a cane (Tr. 28), which is also supported by the record (*compare* Tr. 51 *with* Tr. 184-185).
Given that the reports of Plaintiff's treating physicians were repeatedly skeptical of Plaintiff's allegations of pain and that the credibility of Plaintiff's subjective pain testimony is undermined by his own conflicting testimony, the court finds that substantial evidence supports the ALJ's finding that Plaintiff does not meet the threshold requirement of the pain standard, and therefore does not qualify for disability.

[5]98 F.3d 966 (7th Cir. 1996).

Plaintiff cites SSR 96-7P, arguing that Plaintiff's "longitudinal history of complaints and attempts at relief" support the credibility of Plaintiff's pain complaints. (Pl.'s Mem. 11). However, Plaintiff has not articulated why such a history should outweigh other substantial evidence relied upon by the ALJ. (Pl.'s Mem. 11).

Plaintiff finally argues that "the ALJ ignore[d] the opinion rendered by Dr. Nortick" regarding "Plaintiff's ability to do work-related activities." (Pl.'s mem. 12). This is not the case. In fact, the ALJ explicitly accounted for Dr. Nortick's opinion in his decision. (Tr. 28). However, the ALJ decided that the opinion of Dr. Stehr, a treating physician who saw Plaintiff on multiple occasions, carried more evidentiary weight than that of Dr. Nortick. (Tr. 28).

All of these arguments misunderstand the scope of this court's review. The core of each of Plaintiff's arguments is hisdisagreement with the weight the ALJ assigned to different pieces of medical evidence. However, this court may not re-weigh evidence already considered by the ALJ. *Martin,* 894 F.2d at 1529 (citing *Bloodsworth,* 703 F.2d at 1239). Therefore, these arguments are ineffective in attempting to erode the evidentiary foundation underlying the ALJ's credibility determination.

In sum, the ALJ's credibility determinations were grounded in numerous articulated reasons supported by the record. Plaintiff has failed to successfully refute any of these reasons by showing that they are not supported by substantial evidence, and, further, has made no attempt to address some of them in any way. Plaintiff argues that this court should re-weigh evidence already considered by the ALJ, which is impermissible. The ALJ's credibility determinations were supported by substantial evidence.

## VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with the memorandum of decision will be entered.

**DONE** and **ORDERED** this 17th day of June, 2013.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE